```
UNITED STATES DISTRICT COURT                           FILED
EASTERN DISTRICT OF NEW YORK                           CLERK
-----------------------------------X
DIANA ALEXANDER-CALLENDER,                             12/30/2015 11:46 am

                    Plaintiff,                         U.S. DISTRICT COURT
                                                       EASTERN DISTRICT OF NEW YORK
                                                       LONG ISLAND OFFICE

         -against-
                                                       MEMORANDUM & ORDER
NBTY, INC., WILLIAM EVANS, GERARD                      14-CV-2462 (JS)(AYS)
ROSAND, PAM ANTOS, YVETTE REYES,
and ELMORE TEAGLE, sued in their
individual and official capacities
pursuant to NYEL §§ 290 et. seq.,

                    Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:            Kyle T. Pulis, Esq.
                          Scott Michael Mishkin PC
                          One Suffolk Square, Suite 240
                          Islandia, NY 11749

For Defendants:
NBTY, Inc., William
Evans, Gerard Rosand,
Pam Antos                 Domenique Camacho Moran, Esq.
                          Heather P. Harrison, Esq.
                          Farrell Fritz PC
                          1320 RXR Plaza
                          Uniondale, NY 11556

Elmore Teagle             Christine Malafi, Esq.
                          Jeffrey V. Basso, Esq.
                          Campolo Middleton & McCormick LLP
                          4175 Veterans Memorial Highway, Suite 400
                          Ronkonkoma, NY 11779
```

SEYBERT, District Judge:

Plaintiff Diana Alexander-Callender ("Plaintiff") brings this action against her former employer NBTY, Inc. ("NBTY") and various employees, including William Evans ("Evans"), Gerard Rosand ("Rosand"), Pam Antos ("Antos"), Jim Ferle ("Ferle"), Ivette Cortes ("Cortes"),[1] and Elmore Teagle ("Teagle" or "Defendant"), (collectively, "Defendants") asserting violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York Human Rights Law, New York Executive Law § 296 ("NYHRL"). Plaintiff asserts three causes of action against NBTY under Title VII and the NYHRL: (1) hostile work environment, (2) discrimination on the basis of race, and (3) retaliation. Plaintiff alleges that Teagle, along with the remaining Defendants, aided and abetted NBTY's misconduct and is thus personally liable to Plaintiff under the NYHRL. (Compl., Docket Entry 1, ¶¶ 44-45.) Teagle has moved to dismiss the Complaint. (Docket Entry 22.) For the reasons that follow, Teagle's motion to dismiss is GRANTED.

---

[1] Elmore Teagle asserts that Plaintiff incorrectly named Ivette Cortes as "Yvette Reyes" in the Complaint. (Def.'s Reply Br., Docket Entry 28, at 1.) The Clerk of the Court is directed to amend the caption accordingly.

BACKGROUND[2]

I.  Factual Background

   A.  Plaintiff's Employment at NBTY

   Plaintiff, a black female of Trinidadian national origin, worked for NBTY from June 2000 to December 2011. (Compl. ¶¶ 47, 58, 141, 143.) NBTY manufactures, sells, and distributes various products, including vitamins, minerals, and herbs.[3] During her eleven-year career, Plaintiff worked as a machine operator, capsule inspector, and then as a lead operator in the Encapsulation Department. (Compl. ¶¶ 48, 50, 60.) Plaintiff alleges that Evans, Rosand, Antos, and Ferle were Plaintiff's direct supervisors at NBTY and that Cortes worked in the Human Resources Department. (Compl. ¶¶ 13, 19, 25, 31, 37.)

   B.  The Allegedly Hostile Work Environment

   In 2011, Teagle was transferred to Plaintiff's department and placed under Plaintiff's supervision. (Compl. ¶ 84.) Beginning in 2008, however, Plaintiff began to experience sexual harassment. (Compl. ¶ 52.) In 2004, a co-worker offered

---

[2] The facts alleged in the Complaint are presumed to be true for the purposes of this Memorandum and Order. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks and citation omitted)).

[3] http://www.nbty.com/ourcompany/whoweare.

Plaintiff $200 to have sex with him. (Compl. ¶ 54.) In 2010, Ferle "walked up behind [P]laintiff and smacked her on her behind." (Compl. ¶ 67.) That same year, Plaintiff's packaging supervisor offered her $3 if she had sex with him in the parking lot. (Compl. ¶ 71.)

Shortly after Teagle's transfer, Plaintiff reviewed Teagle's personnel file. (Compl. ¶ 88.) There, she learned that Teagle was a "level 3" sex offender, which, she understood, carries "a high risk of repeat offense and a threat to public safety." (Compl. ¶ 86.) Plaintiff also noticed that Teagle received a "FINAL WARNING" work performance marking on his personnel file. (Compl. ¶ 88.) Finally, Plaintiff understood that Teagle was the alleged subject of a Human Resources investigation for drawing a penis on a piece of cardboard at work. (Compl. ¶ 94.)

Plaintiff alleges that since Teagle arrived, he "regularly engaged in severe and pervasive sexually inappropriate conversations and comments." (Compl. ¶ 111.) For example, Plaintiff alleges that Teagle stared at Plaintiff "in a sexually inappropriate manner" or with a "sexually suggestive look" on his face. (Compl. ¶¶ 97, 100, 112, 118-19, 127.) Plaintiff further alleges that Teagle followed her and other female employees around the department. (Compl. ¶ 112.)

Plaintiff also learned about additional incidents involving Teagle from other employees. Plaintiff understood that

4

Teagle walked into the women's restroom on multiple occasions, (Compl. ¶¶ 96, 110), and had a sexually explicit conversation in front of female employees. (Compl. ¶ 103.)

Next, Plaintiff references an incident "in or about October 2011" in which Teagle allegedly "stood in front of [P]laintiff and grabbed his penis over his pants in front of [P]laintiff's face." (Compl. ¶ 113.) In another portion of the Complaint, Plaintiff alleges a similar incident in 2011 where she "noticed that [Teagle] was grabbing his pants and shaking his leg while looking at [P]laintiff in an inappropriate sexual manner." (Compl. ¶ 127.) It is unclear if Plaintiff is referring to the same incident or a separate one.

Lastly, Plaintiff alleges that Teagle made certain remarks to her that made her uncomfortable, including "Hmm, Diane you hear everything," "Diane, you don't understand," and "I can find anyone if I need to." (Compl. ¶¶ 120-21, 127.) Plaintiff also claims that Teagle would "regularly creep up behind [her] while she was walking through the parking lot" and even followed her home. (Compl. ¶¶ 120, 123-24.)

Plaintiff states that Teagle's conduct "altered the terms and conditions of [her] employment." (Compl. ¶ 115.) Plaintiff alleges that she was disgusted and humiliated by Teagle's conduct and that she "could not look [Teagle] directly in the eyes" because he frightened her and the other female employees. (Compl.

¶¶ 114, 122.) Plaintiff also alleges that Teagle's conduct made it "nearly impossible" for Plaintiff to perform her work at NBTY. (Compl. ¶ 115.)

C. The Alleged Discrimination

Along with the hostile work environment, Plaintiff alleges that she was subjected to racial discrimination, beginning in 2008. (Compl. ¶ 52.) Plaintiff alleges that an employee approached her in the locker room and referred to her as a "nigger." (Compl. ¶ 58.) Plaintiff further alleges that Ferle regularly referred to Hispanic employees as "spics" and commented that "black people have sex with dogs in Africa which is why we have the Aids [sic] virus in America." (Compl. ¶ 64.)

Plaintiff also believed that she was treated differently than some of her co-workers. One employee regularly told Plaintiff to "fuck off," which she viewed as discrimination because that employee "did not treat his Caucasian co-workers or supervisors in the same manner." (Compl. ¶ 80.) Similarly, another employee told Plaintiff, "don't sit next to me! You smell! Even my pussy smells better than you!" Plaintiff viewed this as racial discrimination because the employee "did not treat [P]laintiff's Caucasian co-workers in the same manner." (Compl. ¶ 135.)

Notably, the Complaint contains no factual assertions against Teagle for racial discrimination. (See generally Compl.) Evans allegedly made a comment to Plaintiff that Teagle did not

6

want to work on the first shift "because there were too many Hispanics," (Compl. ¶ 92.), but it appears that this comment was not made by Teagle or even in reference to Plaintiff who is a "black female of Trinidadian descent." (Compl. ¶ 58.)

   D. The Alleged Retaliation

Plaintiff alleges that throughout her tenure at NBTY, she lodged several complaints to her supervisors about the alleged harassment and discrimination but, to her dismay, they took no action. Instead, she claims that they retaliated against her through: (1) negative work performance warnings, (2) transferring Teagle to her department, and (3) ultimately, her termination in December 2011. (See, e.g., Compl. ¶¶ 68, 75-77, 83, 90, 137-38, 140, 143-45.) There is no factual assertion in the Complaint that Teagle retaliated against her or exerted any authority over Plaintiff. (See generally Compl.)

II. Procedural History

Plaintiff commenced this action on April 17, 2014. NBTY, Evans, Rosand, Antos, and Cortes have filed an answer, and Ferle was dismissed from the case. On October 31, 2014, Teagle filed a motion to dismiss. (Docket Entry 22.) In support, he argues that even if Plaintiff can establish predicate liability of her former employer NBTY: (1) her hostile work environment claim should be dismissed because Plaintiff's allegations only consist of vague, non-specific conduct, mildly offensive behavior, and conclusory

7

allegations (Def.'s Br., Docket Entry 24, at 12); and (2) her claims for racial discrimination and retaliation against Teagle have no basis in the evidence (Def.'s Br., at 11, 17-18). Plaintiff contends that Teagle ignores the totality of the circumstances and engages in a piecemeal analysis, viewing the events in isolation. (Pl.'s Opp. Br., Docket Entry 27, at 8.)

DISCUSSION

The Court will first address the applicable legal standard before turning to Teagle's motion.

I. Legal Standard

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must accept all allegations in the complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted).

Plaintiff alleges, in part, that Teagle aided and abetted racial discrimination. (See Compl. ¶¶ 44-45.) Generally,

discrimination claims under the NYHRL are analyzed under the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Littlejohn v. City of N.Y., 795 F.3d 297, 307-11 (2d Cir. 2015) (outlining the three-part burden-shifting framework). At the pleadings stage, however, a plaintiff need not plead a prima facie case of discrimination. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002) (finding that the McDonnell Douglas framework only applied at the summary judgment phase because it is "an evidentiary standard, not a pleading requirement"); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015). Rather, a complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998 (quoting FED R. CIV. P. 8(a)(2)). Thus, a plaintiff must provide nonconclusory allegations that give "plausible support" to the plaintiff's burden, as required by the governing statute. Vega, 801 F.3d at 84 (citation omitted).

II. Teagle's Motion to Dismiss

Teagle first argues that "Plaintiff cannot establish predicate liability against her former employer NBTY" for all three claims. (Def.'s Br. at 10.) But even if Plaintiff could, Teagle contends that Plaintiff has failed to plausibly allege that Teagle

9

violated the NYHRL's aid-or-abet section for all three claims. The NYHRL provides, in pertinent part, that it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. EXEC. LAW § 296(6) (McKinney 2015). In the Complaint, Plaintiff alleges that Teagle "actually participated in the conduct giving rise to plaintiff's discrimination, sexual harassment and retaliation claims and is therefore personally liable for the adverse treatment of Plaintiff." (Compl. ¶¶ 44-45.) The Court will address each claim in turn.

A.  Hostile Work Environment

Teagle's principal position is that Plaintiff's allegations amount to vague, non-specific incidents that do not rise to the level of a hostile work environment. (Def.'s Br. at 14.) The Court agrees.

"When determining whether a hostile work environment exists, the standard under Title VII and the NYHRL are identical." Dais v. Lane Bryant, Inc., 168 F. Supp. 2d 62, 75 (S.D.N.Y. 2001) (citation omitted). Thus, to plead a claim for hostile work environment, a plaintiff must produce evidence that the alleged conduct "'(1) is objectively severe or pervasive--that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such

an environment because of the plaintiff's sex,'" or another protected characteristic.  See Conklin v. Cnty. of Suffolk, 859 F. Supp. 2d 415, 425 (E.D.N.Y. 2012) (quoting Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)).

Courts in this Circuit have recognized that a plaintiff's burden is "remarkably high."  See, e.g., DelaPaz v. N.Y. City Police Dep't, No. 01-CV-5416, 2003 WL 21878780, at *3 (S.D.N.Y. Aug. 8, 2003) (observing that "the Second Circuit erected a remarkably high hurdle with respect to the level and frequency of offensive conduct that must be present in order to sustain" a hostile work environment claim).  When considering this burden, courts must evaluate the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (alterations omitted) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 369, 126 L. Ed. 2d 295 (1993)).  The conduct must be "sufficiently continuous and concerted," and a few isolated incidents will not suffice.  See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (citation omitted).  But see Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) ("[A] single act can create a hostile work environment if it in fact 'work[s] a transformation of the

11

plaintiff's workplace.'" (quoting Alfano, 294 F.3d at 374. (alteration in original)).

As the Second Circuit recognized, "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" is not actionable. Redd v. N. Y. Div. of Parole, 678 F.3d 166, 177 (2d Cir. 2012) (quotation marks and citation omitted). Rather, a court is more likely to find a hostile work environment when there is evidence of sexual assaults, unwanted physical contact, obscene language, unwelcome sexual solicitations. See id. Cf., Bowen-Hooks v. City of N.Y., 13 F. Supp. 3d 179, 234-35 (E.D.N.Y. 2014) (holding that a female lieutenant failed to establish a hostile work environment where a male official followed her, walked past her office twenty times a day, and stared at her in a "menacing" manner); Zucco v. Auto Zone, Inc., 800 F. Supp. 2d 473, 476 (W.D.N.Y. 2011) (dismissing a hostile work environment claim where a female plaintiff-employee alleged that a male used a female restroom and that several employees made disparaging remarks).

In the Complaint, Plaintiff argues that under the "totality of circumstances," Teagle aided and abetted the creation of a hostile work environment. (Pl.'s Opp. Br. at 8 (citation omitted).) After a careful review of the record, Plaintiff's allegations can be sorted into nine categories:

> 1. Teagle stared at Plaintiff "in a sexually inappropriate manner" or with a "sexually suggestive look" on his face. (Compl. ¶¶ 97, 100, 112, 118-19, 127.)

12

2. Teagle followed Plaintiff and other female employees around the department.  (Compl. ¶ 112.)

3. Teagle made a few non-sexual comments to Plaintiff, such as "Diane, you hear everything" and "Diane, you don't understand."  (Compl. ¶¶ 120-21, 127.)

4. Teagle occasionally followed Plaintiff into the parking lot and home from work.  (Compl. ¶¶ 120, 123-24.)

5. Teagle made an offensive gesture by grabbing his penis in front of Plaintiff.  (Compl. ¶¶ 113, 127.)

6. Teagle walked into the women's restroom on multiple occasions.  (Compl. ¶¶ 96, 110.)

7. Teagle had a sexually explicit conversation in front of female employees.  (Compl. ¶ 103.)

8. Prior to his transfer, Teagle had been the subject of a Human Resources investigation for drawing a penis on a piece of cardboard at work.  (Compl. ¶ 94.)

9. Plaintiff learned of Teagle's status as a registered sex offender.  (Compl. ¶¶ 85-86.)

Teagle first argues that any conduct that did not involve Plaintiff cannot be considered under the totality of the circumstances.  (Def.'s Br. at 12-13.)  Not so.  As more than one court has expressed, "conduct directed at other employees is part of the totality of circumstances to be considered in evaluating a hostile work environment claim."  Byrne v. Telesector Res. Grp., Inc., No. 04-CV-0076, 2007 WL 962929, at *18 (W.D.N.Y. Mar. 29, 2007) (citing Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

Even still, the Court finds that the first-hand experiences and second-hand observations, taken as a whole, do not amount to a hostile work environment. Plaintiff essentially alleges that Teagle stared at Plaintiff, followed her, made non-sexual comments to her, and grabbed his penis in front of her on one or two occasions. The second-hand observations--Teagle entering the female restroom and receiving a Human Resources evaluation--do not amount to severe and pervasive conduct. And Teagle's prior criminal record, on its face, adds no support to the analysis. As Teagle correctly argues, he "has every right to be gainfully employed and to not be profiled without justification simply because of the fact he was a registered sex offender." (Def.'s Reply Br. at 3.); see also N.Y. CORRECT. LAW §§ 752, 753 (McKinney 2007) (prohibiting unfair discrimination of individuals with previous convictions).

At its core, the Complaint provides scant evidence with little specificity on timing, dates, and details. For instance, Plaintiff alleges that Teagle stared at her "in a sexually inappropriate manner" or with a "sexually suggestive look" on his face. Missing from the Complaint, however, is any clarification on what staring "in a sexually inappropriate manner" or with a "sexually suggestive look" means. (Compl. ¶¶ 97, 100, 112, 118-19, 127.) Further, although Plaintiff states that it was "nearly impossible" for her to perform her work, (Compl. ¶ 115), Plaintiff

14

does not allege that Teagle caused her emotional distress or, in any way, prevented Plaintiff from doing her job.

And the cases Plaintiff cites in support have no bearing here. (See Pl.'s Opp. Br. at 11-12.)  In Joseph v. HDMJ Restaurant, Inc., for example, this Court determined that a plaintiff-waitress was subjected to severe and pervasive sexual harassment.  970 F. Supp. 2d 131, 145 (E.D.N.Y. 2013).  But in that case, a supervisor constantly cursed at the plaintiff-waitress, a black female of Haitian national origin, calling her a "fucking bitch" and a "nigger."  Id. at 139.  The restaurant owners also demanded oral sex, and one owner frequently discussed "what he did with his girlfriend" and how much he liked the "blow jobs."  Id.  On another occasion, that same owner pulled out a knife and told the plaintiff-waitress, "look this is the knife I use to cut the throats of waitresses who refuse to give me a blow job."  Id.  In contrast, however, Teagle did not physically threaten Plaintiff. He was not a supervisor, and Plaintiff has not alleged that he used any pejoratives or racial slurs.  And while the restaurant owners hounded the waitress with sexual comments and solicitations, Teagle did no such thing.  At worst, Plaintiff alleges that Teagle was "grabbing his pants and shaking his leg while looking at [her] in an inappropriate sexual manner." (Compl. ¶¶ 113, 127.)  That incident is a far cry from the threatening atmosphere seen in Joseph.

15

Nor does the Southern District's reasoning in Guzman v. News Corporation apply here. No. 09-CV-9323, 2013 WL 5807058 (S.D.N.Y. Oct. 28, 2013). There, a newspaper's editor-in-chief inundated the office with lewd remarks and sexual discussions. The plaintiff-associate editor, who is a black, Hispanic, and Puerto Rican female, learned that the editor-in-chief referred to women as "old bitches" and made a comment concerning "blacks and being monkeys." The plaintiff also learned that the editor-in-chief "had rubbed his erect penis on [another employee's] buttocks, and was making lewd remarks about how great [the employee's] breasts looked" at an office party. Id. at *4. In other instances, the editor-in-chief showed the plaintiff and her co-workers a pornographic picture and discussed the "voracious sexual appetite" of a former employee. Id. at *1-4.

At the summary judgment phase, the Southern District held that the plaintiff provided sufficient evidence of a "sexually charged environment . . . permeating the newsroom, meetings and holiday parties." Id. at *14; see also E.E.O.C. v. Suffolk Laundry Servs., Inc., 48 F. Supp. 3d 497, 511-20 (E.D.N.Y. 2014) (finding a hostile work environment where a manager repeatedly propositioned female employees for sex, stared at their intimate parts, and made continuous and unwanted physical contact with them). But Teagle's conduct is far less severe and pervasive than that of the editor-in-chief in Guzman. Plaintiff never alleges

16

that Teagle engaged in unwanted physical contact, showed pornographic pictures, or made obscene remarks. Without these extra details, the Court cannot conclude that Teagle's conduct crossed the line into sexual harassment.

The Court acknowledges that Plaintiff was, with good reason, upset and uncomfortable by Teagle's behavior. But in light of the Second Circuit's "remarkably high" standard, the Court finds that Teagle's conduct did not amount to severe and pervasive sexual harassment. DelaPaz, 2003 WL 21878780 at *3. Thus, Plaintiff's hostile work environment claim against Teagle is DISMISSED.

B. Racial Discrimination

Plaintiff has not adequately plead her discrimination claim under the NYHRL. For a discrimination claim to survive a motion to dismiss, a plaintiff must plausibly allege that: "(1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 86.

Here, Plaintiff alleges that several NBTY supervisors and employees made racially discriminatory remarks, but none of the allegations involve Teagle. (Compl. ¶¶ 52, 58, 64.) Other employees referred to Plaintiff as a "nigger" and discussed how "black people have sex with dogs," but Teagle made no such comments. Nor does the Complaint allege that Teagle treated his Caucasian co-workers differently. (Compl. ¶¶ 80, 135.) To be

17

sure, there is no evidence that Teagle aided or abetted any discriminatory conduct. (See generally Compl.)

Although her burden is minimal at the pleadings stage, Plaintiff must still provide "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998 (quoting Fed R. Civ. P. 8(a)(2)). She has not done so. Thus, since Plaintiff's discrimination claim against Teagle fails as a matter of law, it is DISMISSED WITH PREJUDICE.

C. Retaliation

Plaintiff has also failed to plausibly allege that Teagle aided and abetted retaliatory conduct in violation of the NYHRL. For a retaliation claim to survive a motion to dismiss, a plaintiff must allege facts showing that: "(1) defendants discriminated--or took an adverse employment action--against [her], (2) 'because' [s]he has opposed any unlawful employment practice." Vega, 801 F.3d at 90 (citation omitted). For the second prong, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Id. (citation omitted).

Here, Plaintiff has presented no evidence, other than conclusory allegations, that Teagle aided or abetted any retaliation against her. (See generally Compl.) Instead, Plaintiff only alleges that Teagle was transferred to her

18

department as retaliation for her past complaints. (Compl. ¶ 90.) That does not meet the minimal burden required under Swierkiewicz. 534 U.S. at 512, 122 S. Ct. at 998 (citing FED R. CIV. P. 8(a)(2)). Thus, since Plaintiff's retaliation claim against Teagle fails as a matter of law, it is also DISMISSED WITH PREJUDICE.

III. Leave to Amend

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) (citing Ronzani v. Sanofi S.A., 889 F.2d 195, 198 (2d Cir. 1990)); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "Nonetheless, courts may deny leave to replead where amendment qualifies as futile." Herbert v. Delta Airlines, No. 12-CV-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (citing Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). For the reasons discussed above, it would be futile to grant Plaintiff leave to replead her discrimination and retaliation claims against Teagle, so those claims are DISMISSED WITH PREJUDICE. Since the Complaint lacks specificity on certain details, however, Plaintiff is granted leave to replead her hostile work environment claim against Teagle.

CONCLUSION

For the foregoing reasons, Teagle's motion to dismiss the Complaint (Docket Entry 22.) is GRANTED. Plaintiff's claims for discrimination and retaliation against Teagle are DISMISSED WITH PREJUDICE. Plaintiff's claim for hostile work environment against Teagle is DISMISSED WITHOUT PREJUDICE and with leave to replead. If Plaintiff wishes to file an Amended Complaint, she must do so within thirty (30) days of the date of this Memorandum and Order. If she fails to do so, her claim will be dismissed with prejudice.

The Clerk of the Court is directed to amend the caption and replace Yvette Reyes with her correct name "Ivette Cortes." See supra n.1.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     December   30  , 2015
           Central Islip, New York